IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ROBERTA K. DENNY,                              09-CV-6121-BR

          Plaintiff,                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


ALAN S. GRAF
Alan Stuart Graf, P.C.
P.O. Box 98
Summertown, TN 38483
(931) 964-3123

          Attorney for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2531

    Attorneys for Defendant


**BROWN, Judge.**

   Plaintiff Roberta K. Denny seeks judicial review of a final

decision of the Commissioner of the Social Security Admini-

stration (SSA) in which he denied Denny's application for

Disability Insurance Benefits (DIB) under Title II of the Social

Security Act.  This Court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

   For the reasons that follow, the Court **REVERSES** the decision

of the Commissioner and **REMANDS** this matter pursuant to sentence

four of 42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.


2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Denny filed an application for DIB on November 8, 2004, alleging a disability onset date of June 16, 2004.  Tr. 59-63.[1] The application was denied initially and on reconsideration. Tr. 25-27, 30-33.  An Administrative Law Judge (ALJ) held a hearing on April 30, 2007.  Tr. 450-80.  At the hearing, Denny was represented by an attorney.  Tr. 450-52.  Denny and a vocational expert (VE) testified.

The ALJ issued a decision on June 5, 2007, in which she found Denny is not disabled and, therefore, is not entitled to benefits.  Tr. 13-22.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on February 25, 2009, when the Appeals Council denied Denny's request for review.  Tr. 5-7.

## BACKGROUND

Denny was born on February 6, 1955, and was 52 years old at the time of the first hearing.  Tr. 59, 453-54.  Denny completed high school and has past relevant work experience as a care giver, security guard, sales clerk, gardener, and factory worker. Tr. 72, 96, 475.

Denny alleges disability due to chronic pain from

---

[1] Citations to the official transcript of record filed by the Commissioner on July 8, 2009, are referred to as "Tr."

3 - OPINION AND ORDER

fibromyalgia, difficulties with memory and concentration due to
Attention Deficit Disorder (ADD), dysthymic disorder, and anxiety
with panic attacks.  Tr. 86-95.

Except when noted, Denny does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 15-20.


## **STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial

4 - OPINION AND ORDER

evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR

96-8p, at *1.   In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).   The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.   An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.   If the Commissioner

meets this burden, the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Denny had not engaged in
substantial gainful activity since June 16, 2004.  Tr. 15.

At Step Two, the ALJ found Denny has the severe impairments
of fibromyalgia and dysthymic disorder.  Tr. 15.  The ALJ found
Denny's thyroid condition, degenerative disk disease, ADD, panic
disorder, and anxiety are not medically determinable nor severe
impairments.  Tr. 15-16.

At Step Three, the ALJ concluded Denny's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 16.  The ALJ found Denny has the RFC to lift and/or to
carry 20 pounds occasionally and 10 pounds frequently; to sit and
to stand and/or to walk six hours in an eight-hour workday with
the option to sit or stand at will; to perform frequent but not
constant use of her hands without repetitive, forceful finger
movement (such as squeezing); and to perform one-to-three step
tasks.  Tr. 16.

At Step Four, the ALJ found Denny is not capable of
performing her past relevant work.  Tr. 20.

At Step Five, the ALJ found Denny could perform jobs that

8 - OPINION AND ORDER

exist in significant numbers in the national economy.

Tr. 21-22.  Accordingly, the ALJ found Denny is not disabled.


**DISCUSSION**

Denny contends the ALJ erred when she (1)improperly rejected the opinion of treating physicians, C. Elizabeth Anderson, M.D., Nicholas  W. Telew, M.D., and Martin M. Klos, M.D.; (2) improperly rejected Denny's testimony; and (3) improperly rejected the statements of lay witness Robert Denny.

**I.    Opinions of Drs. Anderson, Telew, and Klos, Treating Physicians.**

Denny contends the ALJ erred when she rejected the opinions of Drs. Anderson, Telew, and Klos that Denny is disabled.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.  A nonexamining physician's opinion alone is not a legitimate basis

to discredit a treating physician's opinion.  *Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.").

**A.   Dr. Anderson.**

The record reflects Dr. Anderson treated Denny for over two years for her "physical needs," including chronic pain.  Tr. 162-77, 374-80.  Dr. Anderson diagnosed Denny with fibromyalgia and described Denny as a "chronically ill and debilitated woman."  Tr. 162.  The ALJ accepted Dr. Anderson's fibromyalgia diagnosis as a basis for concluding that impairment to be severe.  Tr. 15.

Denny contends Dr. Anderson concluded Denny is disabled and that the ALJ improperly rejected that conclusion.  The ALJ, however, found Dr. Anderson's conclusions were not specific with respect to Denny's functional impairments or limitations.  The ALJ noted Dr. Anderson did not actually conclude Denny was disabled based on her physical impairments, but instead deferred to Dr. Telew, Denny's psychologist, as to Denny's mental impairments.  Tr. 17.  Thus, the ALJ found Dr. Anderson's characterization of Denny as "debilitated" to be unpersuasive.  Tr. 17.

As the ALJ noted, the record reflects Dr. Anderson did not, in fact, conclude Denny was disabled.  Tr. 163.  Dr. Anderson

stated Denny's disability "seems to stem from her bipolar versus depression versus attention deficit disorder" rather than from her physical impairments.  Tr. 163.  Dr. Anderson noted Denny's MRI and nerve- conduction studies were "fairly normal."  Tr. 163. As noted, Dr. Anderson ultimately declined to offer her opinion as to Denny's work-related capacity and deferred to Dr. Telew, Denny's long-time treating psychologist, to make a disability determination based on Denny's psychological impairments. Tr. 163.  Morever, Dr. Anderson stated in her treatment notes that she does not perform disability examinations and that she believes "treating the issues rather than going on disability would be preferable."  Tr. 164.  Thus, the record reflects Dr. Anderson did not give an opinion as to whether Denny is disabled, and the ALJ accurately incorporated Dr. Anderson's diagnosis.

**B.  Dr. Telew.**

Dr. Telew treated Denny's psychological conditions for nearly ten years.  Tr. 121-61, 382-87.  Dr. Telew diagnosed Denny with dysthymic disorder, fibromyalgia, probable pain disorder, and probable Attention Deficit Hyperactivity Disorder (ADHD).  Tr. 122, 123, 125, 132-34.  In his treatment notes from October 21, 2004, Dr. Telew stated he "support[ed] disability" without further elaboration.  Tr. 123.

The ALJ found Dr. Telew's suggestion that Denny is disabled

11 - OPINION AND ORDER

was unsupported by specific functional limitations or clinical
findings.  Tr. 17.  Moreover, the ALJ found Dr. Telew's opinion
was inconsistent with other medical evidence in the record; for
example, Denny reported "no pain" to Dr. Klos who repeatedly
found Denny to be stable on her medication.  Tr. 17.  At Step
Two, the ALJ incorporated Dr. Telew's diagnoses that Denny's
dysthymic disorder and fibromyalgia are severe impairments.
Tr. 15.

    A review of Dr. Telew's treatment notes confirms the ALJ's
conclusion that Dr. Telew failed to identify any specific
limitations on Denny's ability to work.  In fact,
Dr. Telew's notes reflect he treated Denny while she was working
or looking for work at numerous times over the course of her
treatment, and Dr. Telew did not conclude Denny was incapable of
performing work-related functions on those occasions.  Tr. 125,
132, 133, 134, 136, 138.  Moreover, as the ALJ pointed out,
Dr. Telew provided nonmedical reasons for Denny's loss of
employment, which included arguments with supervisors, stress
related to Denny's daughter, and co-worker complaints about
Denny's performance.  Tr. 18-19, 125, 138, 141.

    The record also reflects on September 16, 2004, roughly a
month before Dr. Telew stated he "support[ed] disability,"
Dr. Klos noted Denny reported a pain level of zero (on a scale of
zero to ten), her pain was 90% controlled by medication, she was

working with vocational rehabilitation services seeking a return to school, and she was actively looking for work.  Tr. 213.

Thus, the ALJ accepted Dr. Telew's general diagnoses based on his expertise and long-standing relationship with Denny, but she specifically rejected Dr. Telew's statement supporting Denny's disability because Dr. Telew's statement was brief and conclusory, was not supported by clinical findings, and was contradicted by other evidence in the record.  The reasons given by the ALJ are appropriate bases to reject the opinion of a treating physician.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In addition to her contention that the ALJ erred when she rejected Dr. Telew's opinion that Denny is disabled, Denny asserts the ALJ should have developed the record further to clarify Dr. Telew's allegedly illegible handwritten treatment notes.  The Court, however, finds Dr. Telew's notes are legible despite being handwritten and notes the ALJ did not state she had any difficulty in reading them.  Thus, the Court concludes the ALJ did not err when he did not "develop the record further" as to Dr. Telew's handwritten treatment notes.

**C.   Dr. Klos.**

Dr. Klos treated Denny's pain symptoms for nine years. Tr. 182-276, 317-72, 435-49.  Dr. Klos diagnosed Denny with fibromyalgia, degenerative disk disease, ADD, possible plantar

fasciitis, and possible demyelinating disease.  Tr. 183, 185,
192, 318, 321, 324.  On March 14, 2005, Dr. Klos opined Denny was
disabled due to her pain syndrome and has "had difficulty finding
any employment that is compatible with her pain problems and her
physical limitations."  Tr. 193.  On April 30, 2007, Dr. Klos
repeated his conclusion:  "Ms. Denny continues to have difficulty
finding work that is suitable for her pain syndrome and physical
limitations that does not require repetitive motion, standing or
sitting for long periods of time, and lifting of any weight.
. . .  She continues to be 100% disabled."  Tr. 449.

     Denny contends the ALJ erred when she rejected Dr. Klos's
opinion that Denny is disabled.  The determination of disability,
however, is reserved to the Commissioner, and an ALJ is not
required to accept or to treat as controlling a treating
physician's statement of disability.  *See* SSR 96-5p, at *2-*3.
In addition, an ALJ may properly reject a treating physician's
opinion as to a claimant's limitations when it is incongruous
with the physician's treatment notes.  *Tommasetti v. Astrue*,
533 F.3d 1035, 1041 (9th Cir. 2008).

     In her assessment of Denny's RFC, the ALJ incorporated
Dr. Klos's opinion with respect to the limitations on Denny's
ability to make repetitive and forceful use of her hands and her
need to be able to change positions at will between sitting and
standing to relieve her pain.  Tr. 16, 449.  The ALJ, however,

14 - OPINION AND ORDER

rejected Dr. Klos's opinion that Denny cannot lift "any weight" on the ground that it was not supported by the record.  Tr. 17-19.  Indeed, Denny testified she could lift two gallons of milk and stated she could comfortably lift ten pounds.  Tr. 93, 473.  Denny's husband, Robert Denny, also stated Denny could lift 20 pounds.  Tr. 82.  Thus, the record contradicts the severity of Denny's limitations as stated by Dr. Klos.

The ALJ also found Dr. Klos's statement that Denny could not perform the jobs she lost because of her degree of pain is contradicted by the record.  Tr. 19.  In fact, Dr. Klos's treatment notes reflect Denny quit working at an office job she had in September 2005 because she did not like the office setting and did not want to work graveyard shift.  Tr. 360-61.  Denny was also fired from a job in June 2004 for what she indicated were co-worker complaints of her poor behavior, which Denny apparently disputed.  Tr. 219-20.

The ALJ also found Dr. Klos's treatment notes were inconsistent with and contradicted his conclusion that Denny is completely disabled by her pain.  Tr. 17-19.  The ALJ found Dr. Klos's treatment notes reflect Denny's pain is well-controlled by medication, her symptoms improve with physical activity, and she is capable of performing work-related functions.  Tr. 17-19.  In fact, Dr. Klos's treatment notes reflect Denny reported to  Dr. Klos on at least 18 occasions

15 - OPINION AND ORDER

between 2004 and 2006 that her pain was 100% controlled by medication.  Tr. 182, 184, 194, 200, 317, 323, 329, 332, 338, 341, 348, 351, 357, 360, 362, 365, 368, 371.  On many other occasions, Denny reported 90% to 95% of her pain was controlled by medication.  Tr. 219, 334, 345, 354, 435.  Dr. Klos's treatment notes also reflect Denny regularly walks, stretches, and performs isometric exercises, all of which helps to relieve her symptoms.  Tr. 329, 332, 335, 338, 341, 345, 348, 354, 360, 362, 365, 368, 371, 399, 435.  Specifically, Dr. Klos stated Denny's pain resolves or improves with physical activity. Tr. 354, 369, 371.

In addition, Dr. Klos treated Denny numerous times while she was searching for work or was employed and did not suggest on those occasions that Denny should not be working. In fact, Dr. Klos reported at the time that Denny was doing well at home and at work.  Tr. 184, 213-14, 338-39, 345-46, 357-58, 362-63, 365-66, 368-69.  Dr. Klos noted Denny stated "work will help her mood a lot."  Tr. 195.

Although Denny contends the ALJ selectively cited the record to support her conclusion that Dr. Klos's treatment notes are incongruous with his opinion as to Denny's disability, the Court finds that argument unpersuasive in light of its review of the record.  Although the record reflects Denny complained about fluctuating pain levels, tr. 196-223, 441-46, in the overwhelming

majority of her visits to Dr. Klos Denny reported low levels of
pain and excellent control of her pain with medication.  It is
the ALJ's responsibility to weigh the evidence, and the
Commissioner's decision must be upheld even if the evidence is
susceptible to more than one rational interpretation.  *Webb*, 433
F.3d at 689.

On this record, therefore, the Court finds the ALJ did not
reject the opinion of Dr. Anderson and did not err when he
partially rejected the opinions of Drs. Telew and Klos that Denny
is disabled because the ALJ provided legally sufficient reasons
supported by substantial evidence in the record for doing so.

**II.  Denny's Testimony.**

Denny also contends the ALJ erred when she failed to provide
clear and convincing reasons for rejecting Denny's testimony as
to the intensity, persistence, and limiting effects of her
impairments.

In *Cotton v. Bowen,* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and she must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.

*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Denny's medically determinable impairments reasonably could be "expected to produce some of the alleged symptoms, but that Ms. Denny's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the underlying medical findings." Tr. 17. Denny testified at the hearing that she is unable to work due to debilitating pain, panic attacks that often prevent her from leaving her home, and an inability to understand or to remember instructions. Tr. 459-61. She testified she is able to sit for no more than a half hour without changing positions, to stand for no more than 15 minutes, to walk for no more than 10 minutes, and that she spends ten hours of her day in a reclined position. Tr. 459-62. Denny also attested she has limited

ability to use her hands and that the use of her hands for
"pinching" objects causes her pain.  Tr. 466-67.

    The ALJ did not reject Denny's testimony entirely.  In
Denny's RFC, the ALJ included Denny's stated limitations with
respect to the limited use of her hands, the need to switch
postural positions to alleviate pain, her inability to lift more
than 20 pounds, and her inability to remember and to perform
detailed instructions.  Tr. 16.  The ALJ, however, discredited
Denny's testimony that she is completely disabled on the
following grounds:  (1) treatment notes from Denny's physicians
belie her claims of total disability, (2) Denny's work history
demonstrates she is not totally disabled, (3) the record reflects
Denny's symptoms actually improve when she is working, and
(4) the record reflects Denny is not working due to factors other
than her impairments.  Tr. 17-20.

    As noted, Dr. Klos's treatment records reflect Denny's pain
is well controlled by medication and improves with exercise and
stretching.  The record also reflects Denny was working, actively
seeking work, attending vocational rehabilitation, or making
plans to attend school to obtain a degree at various times in
2004, 2005, and 2006, which is inconsistent with her claims that
she cannot work and struggles to leave her home due to anxiety.
Tr. 125, 132, 133, 134, 136, 138, 184, 213-14, 338-39, 345-46,
357-58, 362-63, 365-66, 368-69.  As noted, the record also

19 - OPINION AND ORDER

reflects Denny stated on several occasions that she feels better
when she is working and active, and Dr. Telew stated Denny
reported in August 2005 that she had obtained employment, was
experiencing a decrease in her pain and anxiety, and it was as if
her fibromyalgia was "in remission."  Tr. 159, 184, 194-95, 329,
354, 369, 385, 470.

        As noted, the record reflects Denny did not lose employment
opportunities because of her pain symptoms.  Denny was fired from
a job in June 2004 because her co-workers complained about her
behavior,  and she left an office job in September 2005 because
she was unhappy with the hours and the "confinement of office
work."  Tr. 83, 219-20, 360-61.

        On this record, therefore, the Court concludes the ALJ did
not err when he rejected Denny's testimony as to the intensity,
persistence, and limiting effects of her impairment because the
ALJ provided clear and convincing reasons supported by the record
for doing so.

**III. Lay Witness Robert Denny.**

        Denny also contends the ALJ erred by rejecting the written
statements of Denny's husband, Robert Denny.  Denny contends the
ALJ did not provide specific reasons germane to Robert Denny for
discrediting his statements.  Denny also contends the ALJ's basis
for rejecting Robert Denny's statements is not a proper basis to
discredit a lay-witness account of a claimant's daily activities

20 - OPINION AND ORDER

and the severity of her symptoms.  *See Bruce v. Astrue*, 557 F.3d
1113, 1115-16 (9th Cir. 2009).  *See also Smolen*, 80 F.3d at 1289.
The ALJ, without any analysis or specific references to the
record, made only one comment on Robert Denny's statements:
"Ms. Denny's husband made reports [similar to Denny's].  These
limitations are credible only to the extent that they are
supported by the objective clinical findings."  Tr. 18.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members.").  The ALJ's reasons
for rejecting lay-witness testimony must also be "specific."
*Stout,* 454 F.3d at 1054.  When "the ALJ's error lies in a failure
to properly discuss competent lay testimony favorable to the
claimant, a reviewing court cannot consider the error harmless
unless it can confidently conclude that no reasonable ALJ, when
fully crediting the testimony, could have reached a different
disability determination."  *Stout,* 454 F.3d at 1056.

Robert Denny stated in his Third Party Function Report that
Denny has good days and bad days.  Tr. 77.  He stated Denny is

21 - OPINION AND ORDER

able on good days to perform activities of daily living such as laundry, washing dishes, vacuuming, preparing simple meals, and caring for their pets.  Tr. 77-78.  He stated, however, Denny is unable on bad days to do anything and sits or reclines all day long.  Tr. 77.  Moreover, Robert Denny stated Denny suffers from a poor memory and sometimes cannot leave her home due to anxiety. Tr. 79-80, 83.  Robert Denny also reported Denny's impairments limit her ability to bend, lift, squat, stand, reach, walk, sit, kneel, talk, see, remember, climb stairs, use her hands, complete tasks, concentrate, understand and follow instructions, and get along with others.  Tr. 82.

The Court finds the ALJ did not provide specific reasons germane to Robert Denny and his statements to support her rejection of Robert Denny's account of Denny's daily activities and limitations resulting from her symptoms.  Moreover, it is improper for the ALJ to discredit Robert Denny's assessment of Denny's pain, a subjective matter, by a general rather than specific reference to its inconsistency with the objective medical evidence.  On this record, the Court cannot conclude that no reasonable ALJ could have found Denny disabled on the basis of Robert Denny's statements regarding Denny having bad days on which she cannot perform any activities.  *See Stout,* 454 F.3d at 1056.  Thus, the Court concludes the ALJ erred when she rejected the statements of Robert Denny without providing legally

sufficient reasons supported by the record for doing so.

## REMAND

Having found the ALJ erred, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.  The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2. The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

Here the Court finds additional proceedings are necessary

23 - OPINION AND ORDER

to allow the ALJ to consider Robert Denny's statements about the severity of Denny's symptoms.  As noted, Denny reported to Dr. Klos that she experienced fluctuating levels of pain and, to a lesser degree, fluctuating levels of pain control.  Tr. 196-223, 441-46.  Although the ALJ provided legally sufficient reasons for discrediting Denny's subjective testimony and for rejecting the conclusory opinions of Drs. Telew and Klos that Denny is disabled, the ALJ failed to provide specific reasons germane to Robert Denny's statements for rejecting his depiction of the fluctuating severity of Denny's symptoms and the frequency with which those symptoms may limit Denny's ability to perform work-related functions.

At the hearing, the ALJ asked the VE the following hypothetical question:  "If an individual were required to lie down throughout the course of the day at unscheduled intervals for unspecified periods of time, would there be work for such a person?"  Tr. 477.  The VE responded such a person could not sustain gainful employment.  Tr. 477.  The ALJ, therefore, must evaluate whether Denny is able to work after consideration of the frequency with which Denny suffers the "bad days" that Robert Denny described and whether the level of impairment that Denny suffers on such days precludes her ability to sustain employment on a "regular and continuing" basis.

Accordingly, the Court concludes on this record that remand

for further proceedings is necessary.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 19th day of March, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

25 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ROBERTA K. DENNY,                          09-CV-6121-BR

        Plaintiff,                  OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


ALAN S. GRAF
Alan Stuart Graf, P.C.
P.O. Box 98
Summertown, TN 38483
(931) 964-3123

        Attorney for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2531

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Roberta K. Denny seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Denny's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Denny filed an application for DIB on November 8, 2004, alleging a disability onset date of June 16, 2004.  Tr. 59-63.[1] The application was denied initially and on reconsideration. Tr. 25-27, 30-33.  An Administrative Law Judge (ALJ) held a hearing on April 30, 2007.  Tr. 450-80.  At the hearing, Denny was represented by an attorney.  Tr. 450-52.  Denny and a vocational expert (VE) testified.

The ALJ issued a decision on June 5, 2007, in which she found Denny is not disabled and, therefore, is not entitled to benefits.  Tr. 13-22.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on February 25, 2009, when the Appeals Council denied Denny's request for review.  Tr. 5-7.

## BACKGROUND

Denny was born on February 6, 1955, and was 52 years old at the time of the first hearing.  Tr. 59, 453-54.  Denny completed high school and has past relevant work experience as a care giver, security guard, sales clerk, gardener, and factory worker. Tr. 72, 96, 475.

Denny alleges disability due to chronic pain from

_____

[1] Citations to the official transcript of record filed by the Commissioner on July 8, 2009, are referred to as "Tr."

fibromyalgia, difficulties with memory and concentration due to Attention Deficit Disorder (ADD), dysthymic disorder, and anxiety with panic attacks.  Tr. 86-95.

Except when noted, Denny does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 15-20.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial

4 - OPINION AND ORDER

evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commis-
sioner determines the claimant's impairments meet or equal
one of a number of listed impairments that the Commissioner
acknowledges are so severe as to preclude substantial gainful
activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R.
§ 404.1520(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404,
subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's RFC.  The claimant's RFC is an assessment
of the sustained, work-related physical and mental activities the
claimant can still do on a regular and continuing basis despite
his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec.
Ruling (SSR) 96-8p.  A "'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent schedule."  SSR

96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner

meets this burden, the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Denny had not engaged in
substantial gainful activity since June 16, 2004.  Tr. 15.

At Step Two, the ALJ found Denny has the severe impairments
of fibromyalgia and dysthymic disorder.  Tr. 15.  The ALJ found
Denny's thyroid condition, degenerative disk disease, ADD, panic
disorder, and anxiety are not medically determinable nor severe
impairments.  Tr. 15-16.

At Step Three, the ALJ concluded Denny's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 16.  The ALJ found Denny has the RFC to lift and/or to
carry 20 pounds occasionally and 10 pounds frequently; to sit and
to stand and/or to walk six hours in an eight-hour workday with
the option to sit or stand at will; to perform frequent but not
constant use of her hands without repetitive, forceful finger
movement (such as squeezing); and to perform one-to-three step
tasks.  Tr. 16.

At Step Four, the ALJ found Denny is not capable of
performing her past relevant work.  Tr. 20.

At Step Five, the ALJ found Denny could perform jobs that

8 - OPINION AND ORDER

exist in significant numbers in the national economy.

Tr. 21-22.  Accordingly, the ALJ found Denny is not disabled.


## DISCUSSION

Denny contends the ALJ erred when she (1)improperly rejected the opinion of treating physicians, C. Elizabeth Anderson, M.D., Nicholas  W. Telew, M.D., and Martin M. Klos, M.D.; (2) improperly rejected Denny's testimony; and (3) improperly rejected the statements of lay witness Robert Denny.

**I.   Opinions of Drs. Anderson, Telew, and Klos, Treating Physicians.**

Denny contends the ALJ erred when she rejected the opinions of Drs. Anderson, Telew, and Klos that Denny is disabled.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.  A nonexamining physician's opinion alone is not a legitimate basis

9 - OPINION AND ORDER

to discredit a treating physician's opinion.  *Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.").

**A.    Dr. Anderson.**

The record reflects Dr. Anderson treated Denny for over two years for her "physical needs," including chronic pain.  Tr. 162-77, 374-80.  Dr. Anderson diagnosed Denny with fibromyalgia and described Denny as a "chronically ill and debilitated woman."  Tr. 162.  The ALJ accepted Dr. Anderson's fibromyalgia diagnosis as a basis for concluding that impairment to be severe.  Tr. 15.

Denny contends Dr. Anderson concluded Denny is disabled and that the ALJ improperly rejected that conclusion.  The ALJ, however, found Dr. Anderson's conclusions were not specific with respect to Denny's functional impairments or limitations.  The ALJ noted Dr. Anderson did not actually conclude Denny was disabled based on her physical impairments, but instead deferred to Dr. Telew, Denny's psychologist, as to Denny's mental impairments.  Tr. 17.  Thus, the ALJ found Dr. Anderson's characterization of Denny as "debilitated" to be unpersuasive.  Tr. 17.

As the ALJ noted, the record reflects Dr. Anderson did not, in fact, conclude Denny was disabled.  Tr. 163.  Dr. Anderson

10 - OPINION AND ORDER

stated Denny's disability "seems to stem from her bipolar versus depression versus attention deficit disorder" rather than from her physical impairments.  Tr. 163.  Dr. Anderson noted Denny's MRI and nerve- conduction studies were "fairly normal."  Tr. 163. As noted, Dr. Anderson ultimately declined to offer her opinion as to Denny's work-related capacity and deferred to Dr. Telew, Denny's long-time treating psychologist, to make a disability determination based on Denny's psychological impairments. Tr. 163.  Morever, Dr. Anderson stated in her treatment notes that she does not perform disability examinations and that she believes "treating the issues rather than going on disability would be preferable."  Tr. 164.  Thus, the record reflects Dr. Anderson did not give an opinion as to whether Denny is disabled, and the ALJ accurately incorporated Dr. Anderson's diagnosis.

### B.  Dr. Telew.

Dr. Telew treated Denny's psychological conditions for nearly ten years.  Tr. 121-61, 382-87.  Dr. Telew diagnosed Denny with dysthymic disorder, fibromyalgia, probable pain disorder, and probable Attention Deficit Hyperactivity Disorder (ADHD).  Tr. 122, 123, 125, 132-34.  In his treatment notes from October 21, 2004, Dr. Telew stated he "support[ed] disability" without further elaboration.  Tr. 123.

The ALJ found Dr. Telew's suggestion that Denny is disabled

was unsupported by specific functional limitations or clinical
findings.  Tr. 17.  Moreover, the ALJ found Dr. Telew's opinion
was inconsistent with other medical evidence in the record; for
example, Denny reported "no pain" to Dr. Klos who repeatedly
found Denny to be stable on her medication.  Tr. 17.  At Step
Two, the ALJ incorporated Dr. Telew's diagnoses that Denny's
dysthymic disorder and fibromyalgia are severe impairments.
Tr. 15.

     A review of Dr. Telew's treatment notes confirms the ALJ's
conclusion that Dr. Telew failed to identify any specific
limitations on Denny's ability to work.  In fact,
Dr. Telew's notes reflect he treated Denny while she was working
or looking for work at numerous times over the course of her
treatment, and Dr. Telew did not conclude Denny was incapable of
performing work-related functions on those occasions.  Tr. 125,
132, 133, 134, 136, 138.  Moreover, as the ALJ pointed out,
Dr. Telew provided nonmedical reasons for Denny's loss of
employment, which included arguments with supervisors, stress
related to Denny's daughter, and co-worker complaints about
Denny's performance.  Tr. 18-19, 125, 138, 141.

     The record also reflects on September 16, 2004, roughly a
month before Dr. Telew stated he "support[ed] disability,"
Dr. Klos noted Denny reported a pain level of zero (on a scale of
zero to ten), her pain was 90% controlled by medication, she was

12 - OPINION AND ORDER

working with vocational rehabilitation services seeking a return to school, and she was actively looking for work.  Tr. 213.

Thus, the ALJ accepted Dr. Telew's general diagnoses based on his expertise and long-standing relationship with Denny, but she specifically rejected Dr. Telew's statement supporting Denny's disability because Dr. Telew's statement was brief and conclusory, was not supported by clinical findings, and was contradicted by other evidence in the record.  The reasons given by the ALJ are appropriate bases to reject the opinion of a treating physician.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In addition to her contention that the ALJ erred when she rejected Dr. Telew's opinion that Denny is disabled, Denny asserts the ALJ should have developed the record further to clarify Dr. Telew's allegedly illegible handwritten treatment notes.  The Court, however, finds Dr. Telew's notes are legible despite being handwritten and notes the ALJ did not state she had any difficulty in reading them.  Thus, the Court concludes the ALJ did not err when he did not "develop the record further" as to Dr. Telew's handwritten treatment notes.

**C.  Dr. Klos.**

Dr. Klos treated Denny's pain symptoms for nine years. Tr. 182-276, 317-72, 435-49.  Dr. Klos diagnosed Denny with fibromyalgia, degenerative disk disease, ADD, possible plantar

fasciitis, and possible demyelinating disease.  Tr. 183, 185, 192, 318, 321, 324.  On March 14, 2005, Dr. Klos opined Denny was disabled due to her pain syndrome and has "had difficulty finding any employment that is compatible with her pain problems and her physical limitations."  Tr. 193.  On April 30, 2007, Dr. Klos repeated his conclusion:  "Ms. Denny continues to have difficulty finding work that is suitable for her pain syndrome and physical limitations that does not require repetitive motion, standing or sitting for long periods of time, and lifting of any weight. . . .  She continues to be 100% disabled."  Tr. 449.

Denny contends the ALJ erred when she rejected Dr. Klos's opinion that Denny is disabled.  The determination of disability, however, is reserved to the Commissioner, and an ALJ is not required to accept or to treat as controlling a treating physician's statement of disability.  *See* SSR 96-5p, at *2-*3.  In addition, an ALJ may properly reject a treating physician's opinion as to a claimant's limitations when it is incongruous with the physician's treatment notes.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

In her assessment of Denny's RFC, the ALJ incorporated Dr. Klos's opinion with respect to the limitations on Denny's ability to make repetitive and forceful use of her hands and her need to be able to change positions at will between sitting and standing to relieve her pain.  Tr. 16, 449.  The ALJ, however,

rejected Dr. Klos's opinion that Denny cannot lift "any weight" on the ground that it was not supported by the record.  Tr. 17-19.  Indeed, Denny testified she could lift two gallons of milk and stated she could comfortably lift ten pounds.  Tr. 93, 473.  Denny's husband, Robert Denny, also stated Denny could lift 20 pounds.  Tr. 82.  Thus, the record contradicts the severity of Denny's limitations as stated by Dr. Klos.

The ALJ also found Dr. Klos's statement that Denny could not perform the jobs she lost because of her degree of pain is contradicted by the record.  Tr. 19.  In fact, Dr. Klos's treatment notes reflect Denny quit working at an office job she had in September 2005 because she did not like the office setting and did not want to work graveyard shift.  Tr. 360-61.  Denny was also fired from a job in June 2004 for what she indicated were co-worker complaints of her poor behavior, which Denny apparently disputed.  Tr. 219-20.

The ALJ also found Dr. Klos's treatment notes were inconsistent with and contradicted his conclusion that Denny is completely disabled by her pain.  Tr. 17-19.  The ALJ found Dr. Klos's treatment notes reflect Denny's pain is well-controlled by medication, her symptoms improve with physical activity, and she is capable of performing work-related functions.  Tr. 17-19.  In fact, Dr. Klos's treatment notes reflect Denny reported to  Dr. Klos on at least 18 occasions

between 2004 and 2006 that her pain was 100% controlled by
medication.  Tr. 182, 184, 194, 200, 317, 323, 329, 332, 338,
341, 348, 351, 357, 360, 362, 365, 368, 371.  On many other
occasions, Denny reported 90% to 95% of her pain was controlled
by medication.  Tr. 219, 334, 345, 354, 435.  Dr. Klos's
treatment notes also reflect Denny regularly walks, stretches,
and performs isometric exercises, all of which helps to relieve
her symptoms.  Tr. 329, 332, 335, 338, 341, 345, 348, 354, 360,
362, 365, 368, 371, 399, 435.  Specifically, Dr. Klos stated
Denny's pain resolves or improves with physical activity.
Tr. 354, 369, 371.

        In addition, Dr. Klos treated Denny numerous times while she
was searching for work or was employed and did not suggest on
those occasions that Denny should not be working. In fact,
Dr. Klos reported at the time that Denny was doing well at home
and at work.  Tr. 184, 213-14, 338-39, 345-46, 357-58, 362-63,
365-66, 368-69.  Dr. Klos noted Denny stated "work will help her
mood a lot."  Tr. 195.

        Although Denny contends the ALJ selectively cited the record
to support her conclusion that Dr. Klos's treatment notes are
incongruous with his opinion as to Denny's disability, the Court
finds that argument unpersuasive in light of its review of the
record.  Although the record reflects Denny complained about
fluctuating pain levels, tr. 196-223, 441-46, in the overwhelming

16 - OPINION AND ORDER

majority of her visits to Dr. Klos Denny reported low levels of
pain and excellent control of her pain with medication.  It is
the ALJ's responsibility to weigh the evidence, and the
Commissioner's decision must be upheld even if the evidence is
susceptible to more than one rational interpretation.  *Webb*, 433
F.3d at 689.

On this record, therefore, the Court finds the ALJ did not
reject the opinion of Dr. Anderson and did not err when he
partially rejected the opinions of Drs. Telew and Klos that Denny
is disabled because the ALJ provided legally sufficient reasons
supported by substantial evidence in the record for doing so.

**II.  Denny's Testimony.**

Denny also contends the ALJ erred when she failed to provide
clear and convincing reasons for rejecting Denny's testimony as
to the intensity, persistence, and limiting effects of her
impairments.

In *Cotton v. Bowen,* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and she must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.

17 - OPINION AND ORDER

*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Denny's medically determinable impairments reasonably could be "expected to produce some of the alleged symptoms, but that Ms. Denny's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the underlying medical findings." Tr. 17. Denny testified at the hearing that she is unable to work due to debilitating pain, panic attacks that often prevent her from leaving her home, and an inability to understand or to remember instructions. Tr. 459-61. She testified she is able to sit for no more than a half hour without changing positions, to stand for no more than 15 minutes, to walk for no more than 10 minutes, and that she spends ten hours of her day in a reclined position. Tr. 459-62. Denny also attested she has limited

ability to use her hands and that the use of her hands for "pinching" objects causes her pain.  Tr. 466-67.

The ALJ did not reject Denny's testimony entirely.  In Denny's RFC, the ALJ included Denny's stated limitations with respect to the limited use of her hands, the need to switch postural positions to alleviate pain, her inability to lift more than 20 pounds, and her inability to remember and to perform detailed instructions.  Tr. 16.  The ALJ, however, discredited Denny's testimony that she is completely disabled on the following grounds:  (1) treatment notes from Denny's physicians belie her claims of total disability, (2) Denny's work history demonstrates she is not totally disabled, (3) the record reflects Denny's symptoms actually improve when she is working, and (4) the record reflects Denny is not working due to factors other than her impairments.  Tr. 17-20.

As noted, Dr. Klos's treatment records reflect Denny's pain is well controlled by medication and improves with exercise and stretching.  The record also reflects Denny was working, actively seeking work, attending vocational rehabilitation, or making plans to attend school to obtain a degree at various times in 2004, 2005, and 2006, which is inconsistent with her claims that she cannot work and struggles to leave her home due to anxiety.  Tr. 125, 132, 133, 134, 136, 138, 184, 213-14, 338-39, 345-46, 357-58, 362-63, 365-66, 368-69.  As noted, the record also

19 - OPINION AND ORDER

reflects Denny stated on several occasions that she feels better when she is working and active, and Dr. Telew stated Denny reported in August 2005 that she had obtained employment, was experiencing a decrease in her pain and anxiety, and it was as if her fibromyalgia was "in remission."  Tr. 159, 184, 194-95, 329, 354, 369, 385, 470.

As noted, the record reflects Denny did not lose employment opportunities because of her pain symptoms.  Denny was fired from a job in June 2004 because her co-workers complained about her behavior,  and she left an office job in September 2005 because she was unhappy with the hours and the "confinement of office work."  Tr. 83, 219-20, 360-61.

On this record, therefore, the Court concludes the ALJ did not err when he rejected Denny's testimony as to the intensity, persistence, and limiting effects of her impairment because the ALJ provided clear and convincing reasons supported by the record for doing so.

**III. Lay Witness Robert Denny.**

Denny also contends the ALJ erred by rejecting the written statements of Denny's husband, Robert Denny.  Denny contends the ALJ did not provide specific reasons germane to Robert Denny for discrediting his statements.  Denny also contends the ALJ's basis for rejecting Robert Denny's statements is not a proper basis to discredit a lay-witness account of a claimant's daily activities

and the severity of her symptoms.  *See Bruce v. Astrue*, 557 F.3d
1113, 1115-16 (9th Cir. 2009).  *See also Smolen*, 80 F.3d at 1289.
The ALJ, without any analysis or specific references to the
record, made only one comment on Robert Denny's statements:
"Ms. Denny's husband made reports [similar to Denny's].  These
limitations are credible only to the extent that they are
supported by the objective clinical findings."  Tr. 18.

     Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members.").  The ALJ's reasons
for rejecting lay-witness testimony must also be "specific."
*Stout,* 454 F.3d at 1054.  When "the ALJ's error lies in a failure
to properly discuss competent lay testimony favorable to the
claimant, a reviewing court cannot consider the error harmless
unless it can confidently conclude that no reasonable ALJ, when
fully crediting the testimony, could have reached a different
disability determination."  *Stout,* 454 F.3d at 1056.

     Robert Denny stated in his Third Party Function Report that
Denny has good days and bad days.  Tr. 77.  He stated Denny is

21 - OPINION AND ORDER

able on good days to perform activities of daily living such as
laundry, washing dishes, vacuuming, preparing simple meals, and
caring for their pets.  Tr. 77-78.  He stated, however, Denny is
unable on bad days to do anything and sits or reclines all day
long.  Tr. 77.  Moreover, Robert Denny stated Denny suffers from
a poor memory and sometimes cannot leave her home due to anxiety.
Tr. 79-80, 83.  Robert Denny also reported Denny's impairments
limit her ability to bend, lift, squat, stand, reach, walk, sit,
kneel, talk, see, remember, climb stairs, use her hands, complete
tasks, concentrate, understand and follow instructions, and get
along with others.  Tr. 82.

The Court finds the ALJ did not provide specific reasons
germane to Robert Denny and his statements to support her
rejection of Robert Denny's account of Denny's daily activities
and limitations resulting from her symptoms.  Moreover, it is
improper for the ALJ to discredit Robert Denny's assessment of
Denny's pain, a subjective matter, by a general rather than
specific reference to its inconsistency with the objective
medical evidence.  On this record, the Court cannot conclude that
no reasonable ALJ could have found Denny disabled on the basis of
Robert Denny's statements regarding Denny having bad days on
which she cannot perform any activities.  *See Stout,* 454 F.3d at
1056.  Thus, the Court concludes the ALJ erred when she rejected
the statements of Robert Denny without providing legally

sufficient reasons supported by the record for doing so.

## REMAND

Having found the ALJ erred, the Court must determine whether
to remand this matter for further proceedings or to remand for
calculation of benefits.   The Ninth Circuit has established a
three-part test "for determining when evidence should be credited
and an immediate award of benefits directed."  *Harman v. Apfel*,
211 F.3d 1172, 1178 (9th Cir. 2000).   The court should grant an
immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.
The decision whether to remand for further proceedings or for
immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

Here the Court finds additional proceedings are necessary

23 - OPINION AND ORDER

to allow the ALJ to consider Robert Denny's statements about
the severity of Denny's symptoms.  As noted, Denny reported to
Dr. Klos that she experienced fluctuating levels of pain and, to
a lesser degree, fluctuating levels of pain control.  Tr. 196-
223, 441-46.  Although the ALJ provided legally sufficient
reasons for discrediting Denny's subjective testimony and for
rejecting the conclusory opinions of Drs. Telew and Klos that
Denny is disabled, the ALJ failed to provide specific reasons
germane to Robert Denny's statements for rejecting his depiction
of the fluctuating severity of Denny's symptoms and the frequency
with which those symptoms may limit Denny's ability to perform
work-related functions.

        At the hearing, the ALJ asked the VE the following
hypothetical question:  "If an individual were required to lie
down throughout the course of the day at unscheduled intervals
for unspecified periods of time, would there be work for such a
person?"  Tr. 477.  The VE responded such a person could not
sustain gainful employment.  Tr. 477.  The ALJ, therefore, must
evaluate whether Denny is able to work after consideration of the
frequency with which Denny suffers the "bad days" that Robert
Denny described and whether the level of impairment that Denny
suffers on such days precludes her ability to sustain employment
on a "regular and continuing" basis.

        Accordingly, the Court concludes on this record that remand

24 - OPINION AND ORDER

for further proceedings is necessary.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 19th day of March, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


25 - OPINION AND ORDER